1

2

3

4

5

6

7

8                           IN THE UNITED STATES DISTRICT COURT

9                          FOR THE EASTERN DISTRICT OF CALIFORNIA

10   ERIC CURTIS,

11            Petitioner,                    No. CIV S-01-1562 GEB DAD P

12        vs.

13   G. J. GUIRBINO, Warden,

14            Respondent.                    FINDINGS & RECOMMENDATIONS

15   _____/

16            Petitioner is a state prisoner proceeding pro se with an application for a writ of

17   habeas corpus pursuant to 28 U.S.C. § 2254.  Petitioner challenges his 1995 conviction on

18   charges of being an ex-felon in possession of a firearm and evading a police officer.  He seeks

19   relief on the grounds that: (1) the California Court of Appeal's decision affirming his judgment

20   of conviction is invalid because it conflicts with his acquittal on the charged robbery; (2) the

21   evidence was insufficient to support his conviction of being an ex-felon in possession of a

22   firearm; (3) the trial court failed to properly instruct the jury on the elements of constructive

23   possession; (4) the trial court erred in imposing consecutive sentences; (5) the cumulative effect

24   of the errors at his trial resulted in a violation of his right to due process; (6) his prior convictions

25   do not constitute proper "strike" offenses within the meaning of California's Three Strikes Law

26   because they occurred prior to the effective date of that law; and (7) his sentence constitutes cruel

                                            1

1   and unusual punishment.  Upon careful consideration of the record and the applicable law, the

2   undersigned will recommend that petitioner's application for habeas corpus relief be denied.

3                              PROCEDURAL BACKGROUND

4           On April 24, 1995, an amended information was filed in the Sacramento County

5   Superior and Municipal Court charging petitioner with robbery, in violation of California Penal

6   Code § 211 (count one); being an ex-felon in possession of a firearm, in violation of California

7   Penal Code § 12021(a) (count two); and evading a police officer, in violation of California

8   Vehicle Code § 2800.1 (count three).  It was also alleged that petitioner previously had been

9   convicted of two serious felonies (robbery) within the meaning of California's Three Strikes

10  Law.[1]  (Clerk's Transcript on Appeal (CT) at 80-82.)  On May 5, 1995, petitioner was found

11  guilty of being an ex-felon in possession of a firearm and evading a police officer.  (Id. at 176-78,

12  240-41.)  He was found not guilty of robbery.  (Id.)  The trial court found true the allegations that

13  petitioner had previously been convicted of two robberies.  (Id. at 240.)  On July 30, 1995,

14  petitioner was sentenced under the Three Strikes Law to two consecutive terms of 25 years-to-

15  life.  (Id. at 241.)

16          On July 18, 1995, petitioner filed an appeal from the judgment of conviction.  (Id.

17  at 242.)  Therein, petitioner claimed that: (1) there was insufficient evidence to support his

18  conviction for being a felon in possession of a firearm; (2) the trial court committed jury

19  instruction error when it responded to a question asked by the jurors during deliberations; (3) the

20  trial court erred in believing it did not have discretion to strike a prior conviction on its own

21  motion in the furtherance of justice; (4) the sentencing court erred in imposing consecutive

22

23          [1]  California's "Three Strikes" Law, which appears in California Penal Code section
    667(b)(i), was enacted by the California Legislature and became effective March 7, 1994.  The
24  statute prescribes increased terms of imprisonment for defendants who have previously been
    convicted of certain "violent" or "serious" felonies.  See Cal. Penal Code § 667(d).  A second
25  strike defendant (with one prior felony conviction) receives "twice the term otherwise provided
    as punishment for the current felony conviction."  Cal. Penal Code § 667(e)(1).  A third strike
26  defendant (with two or more prior felony convictions) receives an indeterminate term of life
    imprisonment, which includes a minimum term.

1  sentences; (5) cumulative error during trial violated his due process right to a fair trial; (6)

2  California's Three Strikes Law is unconstitutionally vague, violates the "rationality test," was not

3  properly enacted as urgency legislation, violates the right to equal protection, and violates the

4  separation of powers doctrine; (7) his prior convictions were not valid "strikes" under the Three

5  Strikes Law because they predated the effective date of that law; (8) his sentence constituted

6  cruel and unusual punishment; and (9) the court's instruction to the jury that it could not consider

7  punishment violated his right to jury oversight of sentencing matters.  (Answer filed March 29,

8  2002 (Answer), Ex. A.)  The California Court of Appeal affirmed petitioner's conviction by

9  order dated August 15, 1997, but vacated the sentence to allow the trial court to consider its

10 discretion whether to strike either of petitioner's prior felony convictions.  (Id., Ex. C.)[2]  On

11 August 29, 1997, petitioner filed a petition for rehearing in the California Court of Appeal.  (Id.,

12 Ex. D.)  The petition was summarily denied by order dated September 9, 1997.  (Id., Ex. E.)

13          On September 26, 1997, petitioner filed a petition for review in the California

14 Supreme Court.  (Resp't's Mot. to Dismiss, filed November 8, 2001 (MTD), Ex. A.)  The

15 question presented for review was whether an appellate court could create inconsistent verdicts

16 by assuming the truth of a factual scenario which was necessarily rejected by the jury.  (Id.)  That

17 petition was summarily denied by order dated October 29, 1997.  (Id., Ex. B.)

18          On remand, petitioner received a new sentencing hearing in the Sacramento

19 County Superior Court.  (Answer, Ex. F at 2; CT at 372.)  On March 20, 1998, the trial court

20 exercised its discretion not to strike any of petitioner's prior conviction allegations and reinstated

21 the sentence previously imposed.  (Answer, Ex. H at 1.)

22          On April 14, 1998, petitioner filed a notice of appeal of the trial court's adverse

23 sentencing decision.  (CT at 372.)  On approximately August 3, 1998, petitioner's counsel filed

24

25          [2] See People v. Superior Court (Romero), 13 Cal. 4th 497, 529-30 (1996) (in cases
   charged under California's Three Strikes Law, a court may exercise the power to dismiss prior
26 convictions at the time of sentencing in the furtherance of justice).

1   an opening brief pursuant to <u>People v. Wende,</u> 25 Cal. 3d 436 (1979).  (Answer, Ex. F.)  The

2   California Court of Appeal affirmed petitioner's sentence in a decision filed February 26, 1999.

3   (Answer, Ex. H.)

4            On January 28, 2000, petitioner filed a petition for writ of habeas corpus in the

5   Sacramento County Superior Court.  (Ex. J, filed April 26, 2005.)[3]  Therein, he claimed that the

6   use of his prior convictions as "strikes" under the Three Strikes Law violated the Ex Post Facto

7   and Due Process Clauses and that his sentence under the Three Strikes Law was imposed in

8   violation of a plea agreement in a prior proceeding.  (<u>Id.</u>)  The Superior Court denied this petition

9   in a reasoned opinion dated March 23, 2000.  (Answer, Ex. J.)

10           On March 6, 2001, petitioner filed a petition for writ of habeas corpus in the

11  California Supreme Court.  (Exhibit K, filed April 26, 2005.)  Therein, petitioner claimed that:

12  (1) the evidence was insufficient to support his conviction for being a felon in possession of a

13  firearm; (2) the trial court failed to properly instruct the jury on the elements of constructive

14  possession; (3) the trial court committed jury instruction error when it responded to a question

15  asked by the jurors during deliberations; (4) petitioner's sentence was imposed in violation of a

16  plea agreement in a prior proceeding; (5) the trial court erred in imposing consecutive sentences;

17  (6) the cumulative effect of the errors at his trial resulted in a violation of his right to due

18  process; (7) his prior convictions do not constitute proper "strike" offenses within the meaning of

19  California's Three Strikes Law because they occurred prior to the effective date of that law; (8)

20  his sentence constitutes cruel and unusual punishment; and (9) the trial court's instruction to the

21  jury that it could not consider punishment violated petitioner's right to jury oversight of

22  sentencing matters.  (<u>Id.</u>)  On July 25, 2001, that petition was denied with citation to <u>In re</u>

23  <u>Waltreus,</u> 62 Cal. 2d 218 (1965) and <u>In re Robbins,</u> 18 Cal. 4th 770, 780 (1998).  (<u>Id.</u>)

24

25       [3] On April 26, 2005, respondent filed exhibits J and K in response to a court order dated
    March 9, 2005.  For purposes of clarity, the court notes that respondent's answer filed March 29,
26  2002, also contains exhibits bearing the letters J and K.

1        Petitioner filed a petition for writ of habeas corpus in this court on August 13,

2    2001.[4]  On November 8, 2001, respondent filed a motion to dismiss the petition on the ground

3    that it contained unexhausted claims.  On February 20, 2002, petitioner filed an amended petition

4    for writ of habeas corpus, raising only exhausted claims.  Respondent filed an answer on March

5    29, 2002, and an amended answer on July 22, 2002.  Petitioner filed a traverse on April 29, 2002,

6    and an amended traverse on August 7, 2002.  By order dated May 6, 2006, this court ordered the

7    appointment of counsel for petitioner and set a status conference.  Subsequent to the status

8    conference, the parties were ordered to file briefs addressing the following three issues: (1)

9    respondent's waiver of affirmative defenses; (2) petitioner's procedural default as to claims two

10   through seven; and (3) if the defense of untimeliness has not been waived, the application to this

11   case, if any, of the Supreme Court's decision in Pace v. DiGuglielmo, ___U.S.___, 125 S. Ct.

12   1807 (2005).  Respondent filed his responsive brief on September 12, 2005.  Petitioner filed his

13   responsive brief on October 3, 2005.  In their briefs, both parties urge the court to address the

14   petition for writ of habeas corpus on the merits of petitioner's claims.

15                              FACTUAL BACKGROUND[5]

16        An eyewitness to the robbery testified at trial.  Craig McDonald
          stated he was in his truck in the parking lot of a convenience store
17        in Sacramento.  He saw two men leaving the store with one of
          them carrying a shotgun.  The two hid behind dumpsters at the side
18        of the building for a short time and then ran to the parking lot of a
          neighboring business where a tan Subaru station wagon waited.
19        The men got into the front and rear passenger doors on the right
          side of the wagon.  The car started to drive away before the men
20        were all the way inside.

21        McDonald gave the store employees a description of the getaway
          car and he dialed 9-1-1 on his car phone.  He followed the car to a
22        nearby bowling alley.  While he observed the car, he did not see

23   _____

24        [4]  See Valerio v. Boise Cascade Corp., 80 F.R.D. 626, 635 n.l (N.D. Cal. 1978) (judicial
     notice may be taken of court records), aff'd, 645 F.2d 699 (9th Cir. 1981).

25        [5]  The following summary is drawn from the August 15, 1997 opinion by the California
     Court of Appeal for the Third Appellate District (hereinafter Opinion), at pgs. 3-4, filed on
26   March 29, 2002, as Exhibit C to respondent's Answer filed March 29, 2002.

anybody enter or leave the station wagon.  McDonald lost sight of the wagon when it left the bowling alley parking lot.

California Highway Patrol (CHP) Officer Charles Chellew testified he was on patrol on the night in question when he saw a brown Subaru station wagon pass him in the opposite direction.  Chellew and his partner, Officer Star, followed the wagon.  A high speed chase took place.  During the chase, the suspect vehicle drove in the lane of oncoming traffic in an apparent attempt to cause traffic to swerve around the station wagon and collide head-on into the CHP vehicle.  This happened five times.  The wagon ran a red light almost causing several cars to collide.  Chellew observed a shotgun thrown from the right side of the wagon.  Ultimately, the wagon stopped and three men got out.  Defendant got out through the driver's door.

Defendant testified on his own behalf.  He said he spent most of the day of the robbery with his good friend of four years, Kevin Price, and an acquaintance, Oscar Foster.  At about five in the afternoon, he borrowed his girlfriend's car, a yellow Subaru wagon.  The trio went to Foster's house.  They drove around for several hours drinking beer and smoking marijuana.

Between 10 and 11 p.m. they stopped in a bowling alley parking lot because defendant wanted to talk to a young woman.  Foster and Price left the pair and returned about 40 minutes later.  Defendant denied knowing anything unusual had happened until a number of police vehicles began following the wagon as he drove.  He denied knowing there was a shotgun in the car until Foster pointed it at him and told him to evade the police.

ANALYSIS

I. <u>Standards of Review Applicable to Habeas Corpus Claims</u>

A writ of habeas corpus is available under 28 U.S.C. § 2254 only on the basis of some transgression of federal law binding on the state courts.  <u>See</u> <u>Peltier v. Wright</u>, 15 F.3d 860, 861 (9th Cir. 1993); <u>Middleton v. Cupp</u>, 768 F.2d 1083, 1085 (9th Cir. 1985) (citing <u>Engle v. Isaac</u>, 456 U.S. 107, 119 (1982)).  A federal writ is not available for alleged error in the interpretation or application of state law.  <u>See</u> <u>Estelle v. McGuire</u>, 502 U.S. 62, 67-68 (1991); <u>Park v. California</u>, 202 F.3d 1146, 1149 (9th Cir. 2000); <u>Middleton</u>, 768 F.2d at 1085.

However, a "claim of error based upon a right not specifically guaranteed by the Constitution may nonetheless form a ground for federal habeas corpus relief where its impact so infects the entire trial that the resulting conviction violates the defendant's right to due process."

1   Hines v. Enomoto, 658 F.2d 667, 673 (9th Cir. 1981) (citing Quigg v. Crist, 616 F.2d 1107 (9th

2   Cir. 1980)).  See also Lisenba v. California, 314 U.S. 219, 236 (1941); Henry v. Kernan, 197

3   F.3d 1021, 1031 (9th Cir. 1999).  In order to raise such a claim in a federal habeas corpus

4   petition, the "error alleged must have resulted in a complete miscarriage of justice."  Hill v.

5   United States, 368 U.S. 424, 428 (1962).  See also Henry, 197 F.3d at 1031; Crisafi v. Oliver,

6   396 F.2d 293, 294-95 (9th Cir. 1968).  Habeas corpus cannot be utilized to try state issues de

7   novo.  Milton v. Wainwright, 407 U.S. 371, 377 (1972).

8           Because this action was filed after April 26, 1996, the provisions of the

9   Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") are applicable.  See Lindh v.

10  Murphy, 521 U.S. 320, 336 (1997); Clark v. Murphy, 331 F.3d 1062, 1067 (9th Cir. 2003).

11  Section 2254(d) as amended by the AEDPA, sets forth the following standards for granting

12  habeas corpus relief:

13          An application for a writ of habeas corpus on behalf of a
        person in custody pursuant to the judgment of a State court shall
14      not be granted with respect to any claim that was adjudicated on
        the merits in State court proceedings unless the adjudication of the
15      claim -

16          (1) resulted in a decision that was contrary to, or involved
        an unreasonable application of, clearly established Federal law, as
17      determined by the Supreme Court of the United States; or

18          (2) resulted in a decision that was based on an unreasonable
        determination of the facts in light of the evidence presented in the
19      State court proceeding.

20  28 U.S.C. § 2254(d).  See also Penry v. Johnson, 532 U.S. 782, 792-93 (2001); Williams v.

21  Taylor, 529 U.S. 362 (2000); Lockhart v. Terhune, 250 F.3d 1223, 1229 (9th Cir. 2001).

22  II.  Timeliness of Petition/ Procedural Default

23          In his answer filed on July 22, 2002, respondent argued that the instant petition is

24  barred by the statute of limitations contained in 28 U.S.C. § 2244(d).  At the August 19, 2005,

25  status conference in this matter, the parties disputed whether respondent had waived a defense

26  based on the statute of limitations due to his failure to raise the defense in his original answer,

filed March 29, 2002.  However, in his September 12, 2005 brief, filed after the status

conference, respondent submits that this court may bypass the statute of limitations issue and

resolve the petition on the merits, and states that he has "no objection to this approach."

(Respondent's brief, filed September 12, 2005, at 1, 2.)  This court construes respondent's

representations in this regard as a waiver of any defense based on AEDPA's statute of

limitations.[6]

Notwithstanding the question of waiver, this court may address petitioner's claims

on the merits for a different reason.  Although the question of procedural default and other

general prerequisites for federal habeas corpus which are unrelated to the merits of the particular

claims "should ordinarily be considered first," a reviewing court need not do so "invariably,"

especially when those issues turn on difficult questions of state law.  Lambrix v. Singletary, 520

U.S. 518, 524-25 (1997) (court bypassed question of procedural default to reach the merits of

petitioner's claims).  See also Busby v. Dretke, 359 F.3d 708, 720 (5th Cir. 2004) (same); Carr v.

Cigna Securities, Inc., 95 F.3d 544, 547 (7th Cir. 1996) (court choosing to bypass statute of

limitations issues to reach the merits of the claims before it).  In order to resolve whether the

instant petition is time-barred, the court would be required to address complicated and novel

issues with regard to the applicability of Pace to California's timeliness rules.  In this case, the

court finds that petitioner's claims can be resolved more easily by addressing them on the merits.

Accordingly, the court will assume for the sake of these findings and recommendations that

petitioner's claims are not time-barred.

Petitioner's claims 2, 3, 4, 5, 6, and 7 were raised for the first time before the

California Supreme Court in a petition for writ of habeas corpus filed on March 6, 2001.  As set

forth above, that petition was denied with citation to In re Waltreus, 62 Cal. 2d 218 (1965) and In

---

[6]  In petitioner's October 3, 1005, brief filed after the status conference, he also "urge[s] the court to issue a ruling on the merits of the petition."  (Petitioner's brief, filed October 3, 2005, at 1.)

1 | re Robbins, 18 Cal. 4th 770, 780 (1998).  (Answer, Ex. L.)  Respondent argues that the

2 | California Supreme Court's opinion constitutes a state procedural bar precluding this court from

3 | addressing petitioner's claims 2, 3, 4, 5, 6, and 7 on the merits.

4 | As the United States Supreme Court has explained, in all cases in which a state

5 | prisoner has defaulted his federal claims in state court pursuant to an independent and adequate

6 | state procedural rule, federal habeas review of the claims is barred unless the prisoner can

7 | demonstrate cause for the default and actual prejudice as a result of the alleged violation of

8 | federal law, or demonstrate that failure to consider the claims will result in a fundamental

9 | miscarriage of justice.  Coleman v. Thompson, 501 U.S. 722, 750 (1991).  However, in order to

10 | determine whether petitioner's claims two through seven are procedurally defaulted, this court

11 | would have to determine when the cited state procedural rule(s) became firmly entrenched, when

12 | the rule(s) were triggered, whether the rule(s) have been consistently and regularly applied, and

13 | which procedural bar applies to which of petitioner's claims.  See Johnson v. Mississippi, 486

14 | U.S. 578, 587-89 (1988) (holding that state procedural rule must be consistently or regularly

15 | applied in order to preclude federal review); Siripongs v. Calderon, 35 F.3d 1308, 1318 (9th Cir.

16 | 1994).   Under these circumstances, petitioner's claims can be resolved more easily by addressing

17 | them on the merits.  Accordingly, the court will assume that petitioner's claims two through

18 | seven are not procedurally defaulted and will address them on the merits.  See Lambrix, 520 U.S.

19 | at 524-25.

20 | III.  Petitioner's Claims

21 | A.  Sufficiency of the Evidence

22 | In his second claim, petitioner contends that the evidence was insufficient to

23 | support his conviction on the charge of being an ex-felon in possession of a firearm.[7]  His overall

24 | argument is essentially that his acquittal of the robbery charge eviscerated the prosecutor's theory

25 |

26 | [7] For purposes of clarity, the court will analyze petitioner's first two claims out of order.

9

that he had constructive possession of the firearm due to his involvement as an aider and abettor of the robbery.  He argues that because he was acquitted of robbery the jury must have believed his testimony that he was not involved in the robbery and that he was unaware there was a firearm in the vehicle.

There is sufficient evidence to support a conviction if, "after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979).  See also Prantil v. California, 843 F.2d 314, 316 (9th Cir. 1988) (per curiam).  "Put another way, the dispositive question under Jackson is 'whether the record evidence could reasonably support a finding of guilt beyond a reasonable doubt.'" Chein v. Shumsky, 373 F.3d 978, 982 (9th Cir. 2004) (quoting Jackson, 443 U.S. at 318).[8]  The court must review the entire record when the sufficiency of the evidence is challenged in habeas proceedings.  Adamson v. Ricketts, 758 F.2d 441, 448 n.11 (9th Cir. 1985), vacated on other grounds, 789 F.2d 722 (9th Cir. 1986) (en banc), rev'd, 483 U.S. 1 (1987).  It is the province of the jury to "resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." Jackson, 443 U.S. at 319.  "The question is not whether we are personally convinced beyond a reasonable doubt.  It is whether rational jurors could reach the conclusion that these jurors reached." Roehler v. Borg, 945 F.2d 303, 306 (9th Cir. 1991).

The federal habeas court determines sufficiency of the evidence in reference to the substantive elements of the criminal offense as defined by state law.  Jackson, 443 U.S. at 324 n.16; Chein, 373 F.3d at 983.  In California, the elements of possession of a firearm by a felon are "conviction of a felony and knowing ownership, possession, custody or control of a firearm.

---

[8]  The Ninth Circuit Court of Appeals has declined to consider the question of whether the AEDPA requires an additional degree of deference to the resolution of sufficiency of the evidence claims by state courts.  See Bruce v. Terhune, 376 F.3d 950, 956 (9th Cir. 2004); Chein, 373 F.3d at 983.  Because petitioner's claim fails under the Jackson standard, this court also need not address whether the enactment of the AEDPA altered that test for purposes of federal habeas proceedings.

1  (Opinion at 4.) "Possession may be actual or constructive.  Constructive possession is present

2  when a defendant maintains control or a right to control the weapon; possession may be imputed

3  when the weapon is found in a place subject to the joint dominion and control of the defendant

4  and another."  (Id. at 5.)

5          Notwithstanding petitioner's acquittal of robbery, the California Court of Appeal

6  assessed the evidence presented at trial in reaching its conclusion that there was "substantial

7  evidence of defendant's constructive possession of the shotgun."  (Id.)  In this regard, the state

8  appellate court explained:

9          Our focus is upon the events described by Craig McDonald when
           the robbers fled from the convenience store.  McDonald testified
10         two men left the store with one of them holding the gun.  The two
           ran to the waiting getaway car and entered it through the front and
11         back right-side doors.  The car began moving before the two
           robbers were completely inside.  The conclusion is inescapable that
12         a third person was already behind the wheel.  Upon arrest,
           defendant was behind the wheel.  The car belonged to defendant's
13         girlfriend and he borrowed it with her permission.  Price was a
           friend of four years' standing and Foster was an acquaintance of
14         two months.

15         Strong evidence of the defendant's guilty knowledge and a close
           relationship to a perpetrator may give rise to an inference of
16         possession.  (People v. Land (1994) 30 Cal.App.4th 220, 227.)
           Here, circumstantial evidence of constructive possession included
17         the following facts: defendant was behind the wheel of the getaway
           car as he and two colleague-perpetrators fled from the robbery
18         scene armed with the shotgun; defendant possessed and used his
           girlfriend's car during the robbery.  Substantial evidence supports
19         defendant's conviction of possession of a firearm by a convicted
           felon.

20

21  (Id. at 5-6.)  With respect to petitioner's argument that the jury must have assumed he was not in

22  possession of a firearm because he was acquitted of the robbery, the appellate court stated:

23         Because the jury acquitted him of robbery, defendant asserts it
           must have accepted his testimony he was in the bowling alley
24         parking lot during the commission of the robbery.  Defendant's
           conclusion does not necessarily follow.  The jury could have
25         believed defendant was the driver of the getaway car but still
           acquitted him due to jury nullification.  Or, they could have
26         become confused over the principles of accomplice liability.  Thus,

11

1           an acquittal on the robbery charge does not of necessity mean there
2           were inconsistent verdicts or that the jury believed defendant's
          testimony.

3 (Id. at 6.)

4         The state court's conclusion that there was sufficient evidence to establish

5 petitioner's guilt beyond a reasonable doubt is not erroneous under the federal standards set forth

6 above, nor is it contrary to or an unreasonable application of federal law or based on an

7 unreasonable determination of the facts.  This court will not speculate, on the jury's reason for

8 acquitting petitioner of robbery.  Nor will this court opine on the credibility of the witnesses at

9 petitioner's trial.  As explained by the state appellate court, notwithstanding petitioner's acquittal

10 of robbery there was clearly substantial evidence, in the form of Craig McDonald's testimony,

11 from which a reasonable trier of fact could have found beyond a reasonable doubt that petitioner

12 was guilty of being a felon in possession of a firearm, as that crime is defined in California law.

13 Because there was substantial evidence presented at trial to support petitioner's conviction on

14 this charge, the state court's analysis of this claim is not "objectively unreasonable." Woodford

15 v. Visciotti, 537 U.S. 19, 25 (2002).  See also 28 U.S.C. § 2254(d)(1).  Accordingly, petitioner is

16 not entitled to relief on this claim.

17      B. Decision of California Court of Appeal

18         In two separate claims, petitioner contends that the California Court of Appeal's

19 decision rejecting his claim of insufficient evidence, described above, is invalid because it

20 conflicts with his acquittal on the robbery charge.  In claim No. 1, he alleges:

21           The prosecutor argued that petitioner committed aiding and
          abetting by being the getaway driver.  He also argued that the
22           aiding and abetting continued only until the car reached a place of
          temporary safety which the prosecutor defined as the bowling
23           alley.  If the jury believed that, then it had no choice under the law
          given by the court but to convict petitioner of robbery which it did
24           not.

25 (Am. Pet. at 5.)  In claim No. 8, petitioner argues that the California Court of Appeal erroneously

26 rejected his sufficiency of the evidence claim on direct appeal because it "assum[ed] the truth of

1   a factual scenario which was necessarily rejected by the jury in order to affirm [petitioner's]

2   conviction." (Id. at consecutive p. 8.)  Noting that he was acquitted of the robbery charge,

3   petitioner faults the state appellate court for relying on evidence indicating he was guilty of the

4   robbery to support its decision on his sufficiency of the evidence claim.  In short, petitioner

5   challenges the reasoning behind the state appellate court's opinion with respect to his claim of

6   insufficient evidence.[9]

7             Petitioner's challenge to the logic underlying the state court's opinion does not

8   state an independent claim of a federal constitutional violation.  As explained above, federal

9   habeas corpus relief is available only to persons being held in state custody in violation of the

10  Constitution or federal law; it is not a remedy for errors of state law.  Estelle v. McGuire, 502

11  U.S. at 68.  Further, petitioner has made a specific constitutional claim that the evidence was

12  insufficient to support his conviction and that claim has been addressed above.  He has failed to

13  demonstrate that the judgment of the California courts with respect to that claim resulted in a

14  decision that was contrary to, or involved an unreasonable application of, clearly established

15  federal law, or resulted in a decision that was based on an unreasonable determination of the facts

16  in light of the evidence presented in the state court proceedings. Because petitioner's arguments

17  fail to state an independent federal claim, petitioner is not entitled to relief.

18  /////

19  /////

20  /////

21

22        [9]  Petitioner is not raising a claim that the jury verdicts were inconsistent.  Even if he
    were, the rule is well established that inconsistent verdicts do not constitute sufficient ground on
23  which to set aside a verdict.  United States v. Powell, 469 U.S. 57, 61 (1984) ("inconsistent
    verdicts in criminal trials need not be set aside, but may instead be viewed as a demonstration of
24  the jury's leniency"); Dunn v. United States, 284 U.S. 390, 393 (1932) ( 'The most that can be
    said (in cases with inconsistent verdicts) is that the verdict shows that either in the acquittal or
25  the conviction the jury did not speak their real conclusions, but that does not show that they were
    not convinced of the defendant's guilt"); Evanchyk v. Stewart, 340 F.3d 933, 942 & n.5 (9th Cir.
26  2003), cert. denied 541 U.S. 1067 (2004).

C.  Jury Instruction Error

In his next claim, petitioner contends that the trial court gave an erroneous jury instruction in response to a question asked by the jury during its deliberations.  The facts surrounding this claim are set forth below.

Petitioner's jury received the following instruction on constructive possession:

> Every person who, having previously been convicted of a felony has in his possession or under his control any pistol, revolver or other firearm, is guilty of a violation of Section 12021(a) of the Penal Code, a crime.

> In order to prove such a crime, each of the following elements must be proved:

> The defendant had in his possession or had under his control a firearm; two, the defendant has knowledge of the presence of said firearm.

> There are two kinds of possession: Actual possession and constructive possession.

> Actual possession requires that a person exercise direct physical control over a thing.

> Constructive possession does not require actual possession, but does require that a person *knowingly* exercise control or the right to control a thing either directly or through another person or persons.

> One person may have possession alone, or two or more persons together may share actual or constructive possession.

(RT at 968.)  (Emphasis added.)

During deliberations, petitioner's jury sent a note with the following question to the trial judge:

> On page 31a, it says that constructive possession requires that "a person *knowingly* exercise control or the right to control a thing . . . ." [p] Does this mean that constructive possession requires that "a person *knowingly* exercise control or <u>exercise</u> the right to control a thing . . . ." [p] In other words, if we believe he had the right to control the weapon, must he have exercised that right to be found guilty?

/////

14

1    (CT at 236; RT at 993-94) ) (italics added, underlining in original).  After discussing the jury's

2    note with the parties, the trial court further instructed the jury as follows:

3            The answer is this: The answer is the defendant either exercised
             control or had the right to exercise control. [p] The question that
4            you have written, "or exercise the right to control," is not an
             interpretation under the instruction.
5

6    (RT at 1004.)

7            In the petition before this court, petitioner alleges that "when the jury was

8    concerned about the question of whether [petitioner] constructively possessed the weapon, the

9    court gave an incomplete and contradictory instruction after an inquiry which indicated that it

10   [sic] the jury was confused as to the elements of the offense."  (Am. Pet. at 6.)  On appeal in state

11   court, petitioner argued that the trial judge's response to the jury question was improper because

12   it eliminated the "knowing" requirement and would have permitted the jury to find petitioner

13   guilty even if he did not know there was a firearm in the car.  (Answer, Ex. A at 17.)

14           A challenge to jury instructions does not generally state a federal constitutional

15   claim.  See Middleton, 768 F.2d at 1085 (citing Engle, 456 U.S. at 119); Gutierrez v. Griggs, 695

16   F.2d 1195, 1197 (9th Cir. 1983).  Habeas corpus is unavailable for alleged error in the

17   interpretation or application of state law.  Middleton, 768 F.2d at 1085; see also Lincoln v. Sunn,

18   807 F.2d 805, 814 (9th Cir. 1987); Givens v. Housewright, 786 F.2d 1378, 1381 (9th Cir. 1986).

19   However, a "claim of error based upon a right not specifically guaranteed by the Constitution

20   may nonetheless form a ground for federal habeas corpus relief where its impact so infects the

21   entire trial that the resulting conviction violates the defendant's right to due process."  Hines, 658

22   F.2d at 673, (citing Quigg, 616 F.2d at 107); see also Lisenba, 314 U.S. at 236.

23           In order to warrant federal habeas relief, a challenged jury instruction "cannot be

24   merely 'undesirable, erroneous, or even "universally condemned,"' but must violate some due

25   process right guaranteed by the fourteenth amendment."  Prantil, 843 F.2d at 317 (1988) (quoting

26   Cupp v. Naughten, 414 U.S. 141, 146 (1973)).  To prevail, petitioner must demonstrate that an

1   erroneous instruction "'so infected the entire trial that the resulting conviction violates due

2   process.'" <u>Estelle</u>, 502 U.S. at 72 (quoting <u>Cupp</u>, 414 U.S. at 147).  In making its determination,

3   this court must evaluate the challenged jury instructions "'in the context of the overall charge to

4   the jury as a component of the entire trial process.'"  <u>Prantil</u>, 843 F.2d at 817 (quoting <u>Bashor v.</u>

5   <u>Risley</u>, 730 F.2d 1228, 1239 (9th Cir. 1984)).  Further, in reviewing an allegedly ambiguous

6   instruction, the court "must inquire 'whether there is a reasonable likelihood that the jury has

7   applied the challenged instruction in a way' that violates the Constitution."  <u>Estelle</u>, 502 U.S. at

8   72 (quoting <u>Boyde v. California</u>, 494 U.S. 370, 380 (1990)).

9           The California Court of Appeal rejected petitioner's argument in this regard with

10  the following language:

11          Defendant contends the court's answer to the jury's question
            eliminated the "knowing" element completely.  We do not agree
12          with his strained reading.

13          The jury's question did not touch upon the "knowing" element of
            constructive possession.  It explicitly asked whether defendant had
14          to exercise a right to control the weapon, not merely possess the
            right to control.  The court's answer adequately replied to the
15          question and did not touch on the "knowing" element.  We find no
            error.

16

17  (Opinion at 8.)

18          The opinion of the California Court of Appeal that the trial judge adequately

19  responded to the question actually asked by the jury is not contrary to or an unreasonable

20  application of the due process principles set forth above, nor is it based on an unreasonable

21  determination of the facts of this case.  A fair reading of the jury's question reflects confusion

22  about whether petitioner had to actually exercise the right to control the firearm (i.e., use it) or

23  whether it was enough that he could exercise control if he wished to.  The jury's question did not

24  appear to demonstrate any confusion about whether petitioner had to know the weapon was in the

25  car.  In any event, the jury instructions clearly explained that the defendant must have knowledge

26  /////

16

1    of the presence of the firearm and that control or right to control had to be "knowing."  (RT at

2    968.)  The trial court did not err in answering the question asked by petitioner's jury.

3          Petitioner's further argument that the trial judge's answer to the jury's question

4    was "incomplete and contradictory" is not borne out by the record.  After reviewing the relevant

5    record, this court concludes that the trial judge's response to the jury's question did not

6    render petitioner's trial fundamentally unfair.  Accordingly, petitioner is not entitled to relief on

7    this claim.

8       D.   <u>Sentencing Error</u>

9          Petitioner raises two claims of sentencing error.  The court will analyze these

10    claims below after setting forth the applicable legal principles.

11        1.   <u>Legal Standards</u>

12          Habeas corpus relief is unavailable for alleged errors in the interpretation or

13    application of state sentencing laws by either a state trial or appellate court, unless the error

14    resulted in a complete miscarriage of justice.  <u>Hill</u>, 368 U.S. at 428; <u>Hendricks v. Zenon</u>, 993

15    F.2d 664, 674 (9th Cir. 1993); <u>Middleton</u>, 768 F.2d at 1085.  So long as a state sentence "is not

16    based on any proscribed federal grounds such as being cruel and unusual, racially or ethnically

17    motivated, or enhanced by indigency, the penalties for violation of state statutes are matters of

18    state concern."  <u>Makal v. State of Arizona</u>, 544 F.2d 1030, 1035 (9th Cir. 1976).  Thus, "[a]bsent

19    a showing of fundamental unfairness, a state court's misapplication of its own sentencing laws

20    does not justify federal habeas relief."  <u>Christian v. Rhode</u>, 41 F.3d 461, 469 (9th Cir. 1994).

21          Applying these principles in federal habeas proceedings, the Ninth Circuit Court

22    of Appeals has specifically refused to consider alleged errors in the application of state

23    sentencing law.  <u>See</u>, <u>e.g.</u>, <u>Miller v. Vasquez</u>, 868 F.2d 1116 (9th Cir. 1989).  Thus, in <u>Miller</u>, the

24    court refused to examine the state court's determination that a defendant's prior conviction was

25    for a "serious felony" within the meaning of the state statutes governing sentence enhancements.

26    <u>Id.</u> at 1118-19.  The court did not reach the merits of the petitioner's claim, stating that federal

1   habeas relief is not available for alleged errors in interpreting and applying state law.  Id.

2   (quoting Middleton, 768 F.2d at 1085).

3                      2.  Consecutive Sentences

4              Petitioner first claims that the state trial court erred in imposing consecutive

5   sentences for his convictions on the charges of evading arrest and possession of a firearm.  "The

6   decision whether to impose sentences concurrently or consecutively is a matter of state criminal

7   procedure and is not within the purview of federal habeas corpus."  Cacoperdo v. Demosthenes,

8   37 F.3d 504, 507 (9th Cir. 1994).   Accordingly, petitioner's challenge to the judge's decision to

9   impose consecutive sentences fails to state a cognizable federal claim and should be rejected.

10                     3.  Whether the Prior Convictions are "Strikes"

11             Petitioner also claims that his prior convictions do not constitute proper "strike"

12  offenses within the meaning of California's Three Strikes Law because they occurred prior to the

13  effective date of that law.  Whether or not a prior conviction properly constitutes a "strike" under

14  California's Three Strikes Law involves an interpretation of state sentencing law.  In addition,

15  numerous California courts have determined that prior felony convictions which predate the

16  effective date of the Three Strikes Law are "strikes" within the meaning of that law.  See e.g.,

17  People v. Sipe, 36 Cal. App. 4th 468, 477-479 (1995); People v. Moenius, 60 Cal. App. 4th 820,

18  827 (1998); Gonzales v. Superior Court, Stanislaus County, 37 Cal. App. 4th 1302, 1306-1311

19  (1995); People v. Diaz, 41 Cal. App. 4th 1424, 1428-29 (1996);  People v. Green (1995) 36 Cal.

20  App. 4th 280, 283 (1995).  Federal courts are "bound by a state court's construction of its own

21  penal statutes," Aponte v. Gomez, 993 F.2d 705, 707 (9th Cir. 1993), and this court must defer to

22  the California courts' interpretation of the California Three Strikes Law unless its interpretation

23  is "untenable or amounts to a subterfuge to avoid federal review of a constitutional violation."

24  Oxborrow v. Eikenberry, 877 F.2d 1395, 1399 (9th Cir. 1989.)  There is no evidence of that here.

25             Moreover, to the extent that petitioner has stated a federal constitutional claim, he

26  is not entitled to relief.  California's Three Strikes Law took effect on March 7, 1994, before

1  petitioner committed the principal offense in 1995.  The application of a sentencing enhancement

2  based upon a prior conviction does not violate the Ex Post Facto Clause as long as the statute

3  was in effect before the triggering offense was committed.  See United States v.

4  Ahumada-Avalos, 875 F.2d 681, 683-84 (9th Cir.1989).  Petitioner has also failed to show that

5  the state courts committed error resulting in a complete miscarriage of justice.  See Parke v.

6  Raley, 506 U.S. 20, 27 (1992) ("we have repeatedly upheld recidivism statutes 'against

7  contentions that they violate constitutional strictures dealing with double jeopardy, ex post facto

8  laws, cruel and unusual punishment, due process, equal protection, and privileges and

9  immunities'") (quoting Spencer v. Texas, 385 U.S. 554, 560 (1967); United States v. Kaluna,

10  192 F.3d 1188, 1199 (9th Cir. 1999) ("The Supreme Court and this court uniformly have held

11  that recidivist statutes do not violate the Ex Post Facto Clause if they are "on the books at the

12  time the [present] offense was committed.").  For the foregoing reasons, petitioner is not entitled

13  to relief on his claims of sentencing error.

14       E.  Cruel and Unusual Punishment

15            Petitioner claims his sentence of fifty-years-to life constitutes cruel and unusual

16  punishment, in violation of the Eighth Amendment.  The California Court of Appeal rejected this

17  claim on the merits after analyzing pertinent federal law.  (Opinion at 15.)  The appellate court's

18  opinion in this regard is not contrary to federal law and should not be set aside.

19            Successful challenges in federal court to the proportionality of particular sentences

20  are "exceedingly rare."  Solem v. Helm, 463 U.S. 277, 289-90 (1983).  See also Ramirez v.

21  Castro, 365 F.3d 755, 775 (9th Cir. 2004).  "The Eighth Amendment does not require strict

22  proportionality between crime and sentence.  Rather, it forbids only extreme sentences that are

23  'grossly disproportionate' to the crime."  Harmelin v. Michigan, 501 U.S. 957, 1001 (1991)

24  (Kennedy, J., concurring) (citing Solem v. Helm).  Recently, the United States Supreme Court

25  held that it was not an unreasonable application of clearly established federal law for the

26  California Court of Appeal to affirm a sentence of two consecutive 25 year-to-life imprisonment

1  terms for a petty theft with a prior conviction involving theft of $150.00 worth of videotapes.

2  Lockyer v. Andrade, 538 U.S. 63, 75 (2003); see also Ewing v. California, 538 U.S. 11, 29

3  (2003) (holding that a sentence of 25 years-to-life in prison imposed on a grand theft conviction

4  involving the theft of three golf clubs from a pro shop was not grossly disproportionate and did

5  not violate the Eighth Amendment).

6          Moreover, petitioner's argument focuses solely on the gravity of his most recent

7  offense.  However, because petitioner was sentenced as a recidivist under California's Three

8  Strikes law, "in weighing the gravity" of his offense for purposes of a proportionality analysis,

9  the court "must place on the scales not only his current felony," but also his criminal history.

10 Ewing, 538 U.S. at 29.  See also Ramirez, 365 F.3d at 768.   This is not a case in which the

11 petitioner's criminal history is compromised solely of non-violent offenses stemming from a

12 single, dated incident and single guilty plea resulting only in a one-year jail (as opposed to

13 prison) sentence.  See Ramirez, 365 F.3d at 768-69.  Rather, as noted by the California Court of

14 Appeal:

15          In 1990, [petitioner] committed a misdemeanor battery upon his spouse.
            On May 5, 1992, he placed a semi-automatic pistol upon a victim's neck
16          and demanded money.  He demanded money from two other victims and
            struck them with his gun or his fists.  On May 6, 1992, he committed an
17          armed robbery and struck the victim in the process. (CT 287-288.)  His
            crimes paint a picture of a violent, almost sadistic, repeat offender for
18          whom a sentence of 50 years to life does not "shock the conscience."

19 (Opinion at 14.)

20          Although harsh, petitioner's sentence is not inconsistent with federal law as set

21 forth in the holdings of the United States Supreme Court noted above.  The sentence imposed

22 was within statutory limits for the offense committed by petitioner and was not grossly

23 disproportionate to the crime of conviction in light of his criminal history.  See Andrade, 538

24 U.S. at 77.  See also Greenholtz v. Inmates of the Nebraska Penal & Correctional Complex, 442

25 U.S. 1, 7 (1979) ("[t]here is no constitutional or inherent right of a convicted person to be

26 /////

1  conditionally released before the expiration of a valid sentence"). Accordingly, petitioner is not

2  entitled to relief on his Eighth Amendment claim.

3       F.  Cumulative Error

4       Finally, petitioner contends that errors at his trial, when considered cumulatively,

5  deprived him of a fair trial. The Due Process Clause of the Fourteenth Amendment encompasses

6  the right to a fair trial. In re Murchison, 349 U.S. 133, 136 (1955). However, as the United

7  States Supreme Court has stated:

8          The thrust of the many constitutional rules governing the conduct of
           criminal trials is to ensure that those trials lead to fair and correct
9          judgments. Where a reviewing court can find that the record developed at
           trial establishes guilt beyond a reasonable doubt, the
10         interest in fairness has been satisfied and the judgment should be
           affirmed. As we have repeatedly stated, "the Constitution entitles a
11         criminal defendant to a fair trial, not a perfect one."

12  Rose v. Clark, 478 U.S. 570, 579 (1986) (quoting Delaware v. Van Arsdall, 475 U.S. 673, 681

13  (1986)).

14       This court has addressed each of the issues raised in the pending petition and has

15  not found merit with respect to any of petitioner's claims. The court concludes that there were

16  no errors which rendered petitioner's trial fundamentally unfair, either individually or in their

17  cumulative effect. [10] Accordingly, any decision by the California courts rejecting petitioner's

18  cumulative error claim is not contrary to or an unreasonable application of federal law.

19       Accordingly, IT IS HEREBY RECOMMENDED that petitioner's application for

20  a writ of habeas corpus be denied.

21       These findings and recommendations are submitted to the United States District

22  Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within twenty

23

24       [10]  Although the United States Supreme Court has not articulated a claim of "cumulative
         error," the Ninth Circuit has stated that where "no single trial error examined in isolation is
25       sufficiently prejudicial to warrant reversal, the cumulative effect of multiple errors may still
         prejudice a defendant." United States v. Frederick, 78 F.3d 1370, 1381 (9th Cir. 1996). See also
26       Karis v. Calderon, 283 F.3d 1117, 1132 (9th Cir. 2002) (same).

1    days after being served with these findings and recommendations, any party may file written

2    objections with the court and serve a copy on all parties.  Such a document should be captioned

3    "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections

4    shall be served and filed within ten days after service of the objections.  The parties are advised

5    that failure to file objections within the specified time may waive the right to appeal the District

6    Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

7    DATED: October 25, 2005.

8

9                                              DALE A. DROZD
                                               UNITED STATES MAGISTRATE JUDGE
10

11   DAD:8/13:curtis1562.hc

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26