1

2

3

4

5

6

7

8                    IN THE UNITED STATES DISTRICT COURT

9                  FOR THE EASTERN DISTRICT OF CALIFORNIA

10   ERIC CURTIS,

11              Petitioner,                    No. CIV S-01-1562 GEB DAD P

12       vs.

13   G. J. GUIRBINO, Warden,                   AMENDED

14              Respondent.                    FINDINGS & RECOMMENDATIONS

15   _____/

16              In light of respondent's objections to the findings and recommendations issued in

17   this case and good cause appearing, this court vacates the findings and recommendations issued

18   on October 26, 2005, and hereby issues the following amended findings and recommendations.

19              Petitioner is a state prisoner proceeding pro se with an application for a writ of

20   habeas corpus pursuant to 28 U.S.C. § 2254.  Petitioner challenges his 1995 conviction on

21   charges of being an ex-felon in possession of a firearm and evading a police officer.  He seeks

22   relief on the grounds that: (1) the California Court of Appeal's decision affirming his judgment

23   of conviction is invalid because it conflicts with his acquittal on the charged robbery; (2) the

24   evidence was insufficient to support his conviction of being an ex-felon in possession of a

25   firearm; (3) the trial court failed to properly instruct the jury on the elements of constructive

26   possession; (4) the trial court erred in imposing consecutive sentences; (5) the cumulative effect

                                              1

of the errors at his trial resulted in a violation of his right to due process; (6) his prior convictions do not constitute proper "strike" offenses within the meaning of California's Three Strikes Law because they occurred prior to the effective date of that law; and (7) his sentence constitutes cruel and unusual punishment.  Upon careful consideration of the record and the applicable law, the undersigned will recommend that petitioner's application for habeas corpus relief be denied.

PROCEDURAL BACKGROUND

On April 24, 1995, an amended information was filed in the Sacramento County Superior and Municipal Court charging petitioner with robbery, in violation of California Penal Code § 211 (count one); being an ex-felon in possession of a firearm, in violation of California Penal Code § 12021(a) (count two); and evading a police officer, in violation of California Vehicle Code § 2800.1 (count three).  It was also alleged that petitioner previously had been convicted of two serious felonies (robbery) within the meaning of California's Three Strikes Law.[1]  (Clerk's Transcript on Appeal (CT) at 80-82).  On May 5, 1995, petitioner was found guilty of being an ex-felon in possession of a firearm and evading a police officer.  (Id. at 176-78, 240-41.)  He was found not guilty of robbery.  (Id.)  The trial court found true the allegations that petitioner had previously been convicted of two robberies.  (Id. at 240.)  On July 30, 1995, petitioner was sentenced under the Three Strikes Law to two consecutive terms of 25 years-to-life.  (Id. at 241.)

On July 18, 1995, petitioner filed an appeal from the judgment of conviction.  (Id. at 242.)  Therein, petitioner claimed that: (1) there was insufficient evidence to support his conviction for being a felon in possession of a firearm; (2) the trial court committed jury

---

[1] California's "Three Strikes" Law, which appears in California Penal Code section 667(b)(i), was enacted by the California Legislature and became effective March 7, 1994.  The statute prescribes increased terms of imprisonment for defendants who have previously been convicted of certain "violent" or "serious" felonies.  See Cal. Penal Code § 667(d).  A second strike defendant (with one prior felony conviction) receives "twice the term otherwise provided as punishment for the current felony conviction."  Cal. Penal Code § 667(e)(1).  A third strike defendant (with two or more prior felony convictions) receives an indeterminate term of life imprisonment, which includes a minimum term.

instruction error when it responded to a question asked by the jurors during deliberations; (3) the

trial court erred in believing it did not have discretion to strike a prior conviction on its own

motion in the furtherance of justice; (4) the sentencing court erred in imposing consecutive

sentences; (5) cumulative error during trial violated his due process right to a fair trial; (6)

California's Three Strikes Law is unconstitutionally vague, violates the "rationality test," was not

properly enacted as urgency legislation, violates the right to equal protection, and violates the

separation of powers doctrine; (7) his prior convictions were not valid "strikes" under the Three

Strikes Law because they predated the effective date of that law; (8) his sentence constituted

cruel and unusual punishment; and (9) the court's instruction to the jury that it could not consider

punishment violated his right to jury oversight of sentencing matters.  (Answer filed March 29,

2002 (Answer), Ex. A.)  The California Court of Appeal affirmed petitioner's conviction by

order dated August 15, 1997, but vacated the sentence to allow the trial court to consider its

discretion whether to strike either of petitioner's prior felony convictions.  (Id., Ex. C.)[2]  On

August 29, 1997, petitioner filed a petition for rehearing in the California Court of Appeal.  (Id.,

Ex. D.)  The petition was summarily denied by order dated September 9, 1997.  (Id., Ex. E.)

On September 26, 1997, petitioner filed a petition for review in the California

Supreme Court.  (Resp't's Mot. to Dismiss, filed November 8, 2001 (MTD), Ex. A.)  The

question presented for review was whether an appellate court could create inconsistent verdicts

by assuming the truth of a factual scenario which was necessarily rejected by the jury.  (Id.)  That

petition was summarily denied by order dated October 29, 1997.  (Id., Ex. B.)

On remand, petitioner received a new sentencing hearing in the Sacramento

County Superior Court.  (Answer, Ex. F at 2; CT at 372.)  On March 20, 1998, the trial court

/////

---

[2]  See People v. Superior Court (Romero), 13 Cal. 4th 497, 529-30 (1996) (in cases charged under California's Three Strikes Law, a court may exercise the power to dismiss prior convictions at the time of sentencing in the furtherance of justice).

1  exercised its discretion not to strike any of petitioner's prior conviction allegations and reinstated

2  the sentence previously imposed.  (Answer, Ex. H at 1.)

3          On April 14, 1998, petitioner filed a notice of appeal of the trial court's adverse

4  sentencing decision.  (CT at 372.)  On approximately August 3, 1998, petitioner's counsel filed

5  an opening brief pursuant to <u>People v. Wende</u>, 25 Cal. 3d 436 (1979).  (Answer, Ex. F.)  The

6  California Court of Appeal affirmed petitioner's sentence in a decision filed February 26, 1999.

7  (Answer, Ex. H.)

8          On January 28, 2000, petitioner filed a petition for writ of habeas corpus in the

9  Sacramento County Superior Court.  (Ex. J, filed April 26, 2005.)[3]  Therein, he claimed that the

10  use of his prior convictions as "strikes" under the Three Strikes Law violated the Ex Post Facto

11  and Due Process Clauses and that his sentence under the Three Strikes Law was imposed in

12  violation of a plea agreement in a prior proceeding.  (<u>Id.</u>)  The Superior Court denied this petition

13  in a reasoned opinion dated March 23, 2000.  (Answer, Ex. J.)

14          On March 6, 2001, petitioner filed a petition for writ of habeas corpus in the

15  California Supreme Court.  (Exhibit K, filed April 26, 2005.)  Therein, petitioner claimed that:

16  (1) the evidence was insufficient to support his conviction for being a felon in possession of a

17  firearm; (2) the trial court failed to properly instruct the jury on the elements of constructive

18  possession; (3) the trial court committed jury instruction error when it responded to a question

19  asked by the jurors during deliberations; (4) petitioner's sentence was imposed in violation of a

20  plea agreement in a prior proceeding; (5) the trial court erred in imposing consecutive sentences;

21  (6) the cumulative effect of the errors at his trial resulted in a violation of his right to due

22  process; (7) his prior convictions do not constitute proper "strike" offenses within the meaning of

23  California's Three Strikes Law because they occurred prior to the effective date of that law; (8)

24

25          [3]  On April 26, 2005, respondent filed exhibits J and K in response to a court order dated
March 9, 2005.  For purposes of clarity, the court notes that respondent's answer filed March 29,
26  2002, also contains exhibits bearing the letters J and K.

1   his sentence constitutes cruel and unusual punishment; and (9) the trial court's instruction to the

2   jury that it could not consider punishment violated petitioner's right to jury oversight of

3   sentencing matters.  (Id.)  On July 25, 2001, that petition was denied with citation to In re

4   Waltreus, 62 Cal. 2d 218 (1965) and In re Robbins, 18 Cal. 4th 770, 780 (1998).  (Id.)

5           Petitioner filed a petition for writ of habeas corpus in this court on August 13,

6   2001.[4]  On November 8, 2001, respondent filed a motion to dismiss the petition on the ground

7   that it contained unexhausted claims.  On February 20, 2002, petitioner filed an amended petition

8   for writ of habeas corpus, raising only exhausted claims.  Respondent filed an answer on March

9   29, 2002, and an amended answer on July 22, 2002.  Petitioner filed a traverse on April 29, 2002,

10  and an amended traverse on August 7, 2002.  By order dated May 6, 2006, this court ordered the

11  appointment of counsel for petitioner and set a status conference.  Subsequent to the status

12  conference, the parties were ordered to file briefs addressing the following three issues: (1)

13  respondent's waiver of affirmative defenses; (2) petitioner's procedural default as to claims two

14  through seven; and (3) if the defense of untimeliness has not been waived, the application to this

15  case, if any, of the Supreme Court's decision in Pace v. DiGuglielmo, ___U.S.___, 125 S. Ct.

16  1807 (2005).  Respondent filed his responsive brief on September 12, 2005.  Petitioner filed his

17  responsive brief on October 3, 2005.  In their briefs, both parties urge the court to address the

18  petition for writ of habeas corpus on the merits of petitioner's claims.

19                          FACTUAL BACKGROUND[5]

20          An eyewitness to the robbery testified at trial.  Craig McDonald
            stated he was in his truck in the parking lot of a convenience store
21          in Sacramento.  He saw two men leaving the store with one of
            them carrying a shotgun.  The two hid behind dumpsters at the side
22          of the building for a short time and then ran to the parking lot of a

23  ────────────────

24      [4]  See Valerio v. Boise Cascade Corp., 80 F.R.D. 626, 635 n.1 (N.D. Cal. 1978) (judicial
    notice may be taken of court records), aff'd, 645 F.2d 699 (9th Cir. 1981).

25      [5]  The following summary is drawn from the August 15, 1997 opinion by the California
    Court of Appeal for the Third Appellate District (hereinafter Opinion), at pgs. 3-4, filed on
26  March 29, 2002, as Exhibit C to respondent's Answer filed March 29, 2002.

                                        5

neighboring business where a tan Subaru station wagon waited. The men got into the front and rear passenger doors on the right side of the wagon. The car started to drive away before the men were all the way inside.

McDonald gave the store employees a description of the getaway car and he dialed 9-1-1 on his car phone. He followed the car to a nearby bowling alley. While he observed the car, he did not see anybody enter or leave the station wagon. McDonald lost sight of the wagon when it left the bowling alley parking lot.

California Highway Patrol (CHP) Officer Charles Chellew testified he was on patrol on the night in question when he saw a brown Subaru station wagon pass him in the opposite direction. Chellew and his partner, Officer Star, followed the wagon. A high speed chase took place. During the chase, the suspect vehicle drove in the lane of oncoming traffic in an apparent attempt to cause traffic to swerve around the station wagon and collide head-on into the CHP vehicle. This happened five times. The wagon ran a red light almost causing several cars to collide. Chellew observed a shotgun thrown from the right side of the wagon. Ultimately, the wagon stopped and three men got out. Defendant got out through the driver's door.

Defendant testified on his own behalf. He said he spent most of the day of the robbery with his good friend of four years, Kevin Price, and an acquaintance, Oscar Foster. At about five in the afternoon, he borrowed his girlfriend's car, a yellow Subaru wagon. The trio went to Foster's house. They drove around for several hours drinking beer and smoking marijuana.

Between 10 and 11 p.m. they stopped in a bowling alley parking lot because defendant wanted to talk to a young woman. Foster and Price left the pair and returned about 40 minutes later. Defendant denied knowing anything unusual had happened until a number of police vehicles began following the wagon as he drove. He denied knowing there was a shotgun in the car until Foster pointed it at him and told him to evade the police.

ANALYSIS

I. Standards of Review Applicable to Habeas Corpus Claims

A writ of habeas corpus is available under 28 U.S.C. § 2254 only on the basis of some transgression of federal law binding on the state courts. See Peltier v. Wright, 15 F.3d 860, 861 (9th Cir. 1993); Middleton v. Cupp, 768 F.2d 1083, 1085 (9th Cir. 1985) (citing Engle v. Isaac, 456 U.S. 107, 119 (1982)). A federal writ is not available for alleged error in the

/////

1   interpretation or application of state law.  See Estelle v. McGuire, 502 U.S. 62, 67-68 (1991);

2   Park v. California, 202 F.3d 1146, 1149 (9th Cir. 2000); Middleton, 768 F.2d at 1085.

3            However, a "claim of error based upon a right not specifically guaranteed by the

4   Constitution may nonetheless form a ground for federal habeas corpus relief where its impact so

5   infects the entire trial that the resulting conviction violates the defendant's right to due process."

6   Hines v. Enomoto, 658 F.2d 667, 673 (9th Cir. 1981) (citing Quigg v. Crist, 616 F.2d 1107 (9th

7   Cir. 1980)).  See also Lisenba v. California, 314 U.S. 219, 236 (1941); Henry v. Kernan, 197

8   F.3d 1021, 1031 (9th Cir. 1999).  In order to raise such a claim in a federal habeas corpus

9   petition, the "error alleged must have resulted in a complete miscarriage of justice."  Hill v.

10  United States, 368 U.S. 424, 428 (1962).  See also Henry, 197 F.3d at 1031; Crisafi v. Oliver,

11  396 F.2d 293, 294-95 (9th Cir. 1968).  Habeas corpus cannot be utilized to try state issues de

12  novo.  Milton v. Wainwright, 407 U.S. 371, 377 (1972).

13           Because this action was filed after April 26, 1996, the provisions of the

14  Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") are applicable.  See Lindh v.

15  Murphy, 521 U.S. 320, 336 (1997); Clark v. Murphy, 331 F.3d 1062, 1067 (9th Cir. 2003).

16  Section 2254(d) as amended by the AEDPA, sets forth the following standards for granting

17  habeas corpus relief:

18           An application for a writ of habeas corpus on behalf of a
             person in custody pursuant to the judgment of a State court shall
19           not be granted with respect to any claim that was adjudicated on
             the merits in State court proceedings unless the adjudication of the
20           claim -

21           (1) resulted in a decision that was contrary to, or involved
             an unreasonable application of, clearly established Federal law, as
22           determined by the Supreme Court of the United States; or

23           (2) resulted in a decision that was based on an unreasonable
             determination of the facts in light of the evidence presented in the
24           State court proceeding.

25  28 U.S.C. § 2254(d).  See also Penry v. Johnson, 532 U.S. 782, 792-93 (2001); Williams v.

26  Taylor, 529 U.S. 362 (2000); Lockhart v. Terhune, 250 F.3d 1223, 1229 (9th Cir. 2001).

1    II.  Timeliness of Petition/ Procedural Default

2           In his answer filed on July 22, 2002, respondent argued that the instant petition is

3    barred by the statute of limitations contained in 28 U.S.C. § 2244(d).  At the August 19, 2005,

4    status conference in this matter, the parties disputed whether respondent had waived a defense

5    based on the statute of limitations due to his failure to raise the defense in his original answer,

6    filed March 29, 2002.  However, in his September 12, 2005 brief, filed after the status

7    conference, respondent submits that this court may bypass the statute of limitations issue and

8    resolve the petition on the merits, and states that he has "no objection to this approach."

9    (Respondent's brief, filed September 12, 2005, at 1, 2.)[6]

10          Respondent's position that this court may address petitioner's claims on the merits

11   is well-taken.  Although the question of procedural default and other general prerequisites for

12   federal habeas corpus which are unrelated to the merits of the particular claims "should ordinarily

13   be considered first," a reviewing court need not do so "invariably," especially when those issues

14   turn on difficult questions of state law.  Lambrix v. Singletary, 520 U.S. 518, 524-25 (1997)

15   (court bypassed question of procedural default to reach the merits of petitioner's claims).  See

16   also Busby v. Dretke, 359 F.3d 708, 720 (5th Cir. 2004) (same); Carr v. Cigna Securities, Inc., 95

17   F.3d 544, 547 (7th Cir. 1996) (court choosing to bypass statute of limitations issues to reach the

18   merits of the claims before it).  In order to resolve whether the instant petition is time-barred, the

19   court would be required to address complicated and novel issues with regard to the applicability

20   of Pace to California's timeliness rules.  In this case, the court finds that petitioner's claims can

21   be resolved more easily by addressing them on the merits.  Accordingly, without deciding the

22   issue, the court will assume for the sake of these findings and recommendations that petitioner's

23   claims are not time-barred.

24   _____

25          [6] In petitioner's October 3, 1005, brief filed after the status conference, he also "urge[s]
     the court to issue a ruling on the merits of the petition."  (Petitioner's brief, filed October 3, 2005,
26   at 1.)

1    Petitioner's claims 2, 3, 4, 5, 6, and 7 were raised for the first time before the

2 California Supreme Court in a petition for writ of habeas corpus filed on March 6, 2001.  As set

3 forth above, that petition was denied with citation to In re Waltreus, 62 Cal. 2d 218 (1965) and In

4 re Robbins, 18 Cal. 4th 770, 780 (1998).  (Answer, Ex. L.)  Respondent argues that the

5 California Supreme Court's opinion constitutes a state procedural bar precluding this court from

6 addressing petitioner's claims 2, 3, 4, 5, 6, and 7 on the merits.

7    As the United States Supreme Court has explained, in all cases in which a state

8 prisoner has defaulted his federal claims in state court pursuant to an independent and adequate

9 state procedural rule, federal habeas review of the claims is barred unless the prisoner can

10 demonstrate cause for the default and actual prejudice as a result of the alleged violation of

11 federal law, or demonstrate that failure to consider the claims will result in a fundamental

12 miscarriage of justice.  Coleman v. Thompson, 501 U.S. 722, 750 (1991).  However, in order to

13 determine whether petitioner's claims two through seven are procedurally defaulted, this court

14 would have to determine when the cited state procedural rule(s) became firmly entrenched, when

15 the rule(s) were triggered, whether the rule(s) have been consistently and regularly applied, and

16 which procedural bar applies to which of petitioner's claims.  See Johnson v. Mississippi, 486

17 U.S. 578, 587-89 (1988) (holding that state procedural rule must be consistently or regularly

18 applied in order to preclude federal review); Siripongs v. Calderon, 35 F.3d 1308, 1318 (9th Cir.

19 1994).   Under these circumstances, petitioner's claims can be resolved more easily by addressing

20 them on the merits.  Accordingly, the court will assume that petitioner's claims two through

21 seven are not procedurally defaulted and will address them on the merits.  See Lambrix, 520 U.S.

22 at 524-25.

23 /////

24 /////

25 /////

26 /////

III.  Petitioner's Claims

    A.  Sufficiency of the Evidence

       In his second claim, petitioner contends that the evidence was insufficient to support his conviction on the charge of being an ex-felon in possession of a firearm.[7]  His overall argument is essentially that his acquittal of the robbery charge eviscerated the prosecutor's theory that he had constructive possession of the firearm due to his involvement as an aider and abettor of the robbery.  He argues that because he was acquitted of robbery the jury must have believed his testimony that he was not involved in the robbery and that he was unaware there was a firearm in the vehicle.

       There is sufficient evidence to support a conviction if, "after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."  Jackson v. Virginia, 443 U.S. 307, 319 (1979).  See also Prantil v. California, 843 F.2d 314, 316 (9th Cir. 1988) (per curiam).  "Put another way, the dispositive question under Jackson is 'whether the record evidence could reasonably support a finding of guilt beyond a reasonable doubt.'"  Chein v. Shumsky, 373 F.3d 978, 982 (9th Cir. 2004) (quoting Jackson, 443 U.S. at 318).[8]  The court must review the entire record when the sufficiency of the evidence is challenged in habeas proceedings.  Adamson v. Ricketts, 758 F.2d 441, 448 n.11 (9th Cir. 1985), vacated on other grounds, 789 F.2d 722 (9th Cir. 1986) (en banc), rev'd, 483 U.S. 1 (1987).  It is the province of the jury to "resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts."  Jackson, 443 U.S. at 319.  "The question is not whether we are personally

---

[7]  For purposes of clarity, the court will analyze petitioner's first two claims out of order.

[8]  The Ninth Circuit Court of Appeals has declined to consider the question of whether the AEDPA requires an additional degree of deference to the resolution of sufficiency of the evidence claims by state courts.  See Bruce v. Terhune, 376 F.3d 950, 956 (9th Cir. 2004); Chein, 373 F.3d at 983.  Because petitioner's claim fails under the Jackson standard, this court also need not address whether the enactment of the AEDPA altered that test for purposes of federal habeas proceedings.

convinced beyond a reasonable doubt.  It is whether rational jurors could reach the conclusion that these jurors reached."  Roehler v. Borg, 945 F.2d 303, 306 (9th Cir. 1991).

The federal habeas court determines sufficiency of the evidence in reference to the substantive elements of the criminal offense as defined by state law.  Jackson, 443 U.S. at 324 n.16; Chein, 373 F.3d at 983.  In California, the elements of possession of a firearm by a felon are "conviction of a felony and knowing ownership, possession, custody or control of a firearm. (Opinion at 4.)  "Possession may be actual or constructive.  Constructive possession is present when a defendant maintains control or a right to control the weapon; possession may be imputed when the weapon is found in a place subject to the joint dominion and control of the defendant and another."  (Id. at 5.)

Notwithstanding petitioner's acquittal of robbery, the California Court of Appeal assessed the evidence presented at trial in reaching its conclusion that there was "substantial evidence of defendant's constructive possession of the shotgun."  (Id.)  In this regard, the state appellate court explained:

> Our focus is upon the events described by Craig McDonald when the robbers fled from the convenience store.  McDonald testified two men left the store with one of them holding the gun.  The two ran to the waiting getaway car and entered it through the front and back right-side doors.  The car began moving before the two robbers were completely inside.  The conclusion is inescapable that a third person was already behind the wheel.  Upon arrest, defendant was behind the wheel.  The car belonged to defendant's girlfriend and he borrowed it with her permission.  Price was a friend of four years' standing and Foster was an acquaintance of two months.

> Strong evidence of the defendant's guilty knowledge and a close relationship to a perpetrator may give rise to an inference of possession.  (People v. Land (1994) 30 Cal.App.4th 220, 227.) Here, circumstantial evidence of constructive possession included the following facts: defendant was behind the wheel of the getaway car as he and two colleague-perpetrators fled from the robbery scene armed with the shotgun; defendant possessed and used his girlfriend's car during the robbery.  Substantial evidence supports defendant's conviction of possession of a firearm by a convicted felon.

1  (Id. at 5-6.)  With respect to petitioner's argument that the jury must have assumed he was not in

2  possession of a firearm because he was acquitted of the robbery, the appellate court stated:

3               Because the jury acquitted him of robbery, defendant asserts it
                 must have accepted his testimony he was in the bowling alley
4               parking lot during the commission of the robbery.  Defendant's
                 conclusion does not necessarily follow.  The jury could have
5               believed defendant was the driver of the getaway car but still
                 acquitted him due to jury nullification.  Or, they could have
6               become confused over the principles of accomplice liability.  Thus,
                 an acquittal on the robbery charge does not of necessity mean there
7               were inconsistent verdicts or that the jury believed defendant's
                 testimony.

8

9  (Id. at 6.)

10             The state court's conclusion that there was sufficient evidence to establish

11  petitioner's guilt beyond a reasonable doubt is not erroneous under the federal standards set forth

12  above, nor is it contrary to or an unreasonable application of federal law or based on an

13  unreasonable determination of the facts.  This court will not speculate, on the jury's reason for

14  acquitting petitioner of robbery.  Nor will this court opine on the credibility of the witnesses at

15  petitioner's trial.  As explained by the state appellate court, notwithstanding petitioner's acquittal

16  of robbery there was clearly substantial evidence, in the form of Craig McDonald's testimony,

17  from which a reasonable trier of fact could have found beyond a reasonable doubt that petitioner

18  was guilty of being a felon in possession of a firearm, as that crime is defined in California law.

19  Because there was substantial evidence presented at trial to support petitioner's conviction on

20  this charge, the state court's analysis of this claim is not "objectively unreasonable." Woodford

21  v. Visciotti, 537 U.S. 19, 25 (2002).  See also 28 U.S.C. § 2254(d)(1).  Accordingly, petitioner is

22  not entitled to relief on this claim.

23             B.  Decision of California Court of Appeal

24             In two separate claims, petitioner contends that the California Court of Appeal's

25  decision rejecting his claim of insufficient evidence, described above, is invalid because it

26  conflicts with his acquittal on the robbery charge.  In claim No. 1, he alleges:

> The prosecutor argued that petitioner committed aiding and abetting by being the getaway driver.  He also argued that the aiding and abetting continued only until the car reached a place of temporary safety which the prosecutor defined as the bowling alley.  If the jury believed that, then it had no choice under the law given by the court but to convict petitioner of robbery which it did not.

(Am. Pet. at 5.)  In claim No. 8, petitioner argues that the California Court of Appeal erroneously rejected his sufficiency of the evidence claim on direct appeal because it "assum[ed] the truth of a factual scenario which was necessarily rejected by the jury in order to affirm [petitioner's] conviction."  (Id. at consecutive p. 8.)  Noting that he was acquitted of the robbery charge, petitioner faults the state appellate court for relying on evidence indicating he was guilty of the robbery to support its decision on his sufficiency of the evidence claim.  In short, petitioner challenges the reasoning behind the state appellate court's opinion with respect to his claim of insufficient evidence.[9]

Petitioner's challenge to the logic underlying the state court's opinion does not state an independent claim of a federal constitutional violation.  As explained above, federal habeas corpus relief is available only to persons being held in state custody in violation of the Constitution or federal law; it is not a remedy for errors of state law.  Estelle v. McGuire, 502 U.S. at 68.  Further, petitioner has made a specific constitutional claim that the evidence was insufficient to support his conviction and that claim has been addressed above.  He has failed to demonstrate that the judgment of the California courts with respect to that claim resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established

---

[9] Petitioner is not raising a claim that the jury verdicts were inconsistent.  Even if he were, the rule is well established that inconsistent verdicts do not constitute sufficient ground on which to set aside a verdict.  United States v. Powell, 469 U.S. 57, 61 (1984) ("inconsistent verdicts in criminal trials need not be set aside, but may instead be viewed as a demonstration of the jury's leniency"); Dunn v. United States, 284 U.S. 390, 393 (1932) ( 'The most that can be said (in cases with inconsistent verdicts) is that the verdict shows that either in the acquittal or the conviction the jury did not speak their real conclusions, but that does not show that they were not convinced of the defendant's guilt"); Evanchyk v. Stewart, 340 F.3d 933, 942 & n.5 (9th Cir. 2003), cert. denied 541 U.S. 1067 (2004).

1   federal law, or resulted in a decision that was based on an unreasonable determination of the facts

2   in light of the evidence presented in the state court proceedings. Because petitioner's arguments

3   fail to state an independent federal claim, petitioner is not entitled to relief.

4       C. <u>Jury Instruction Error</u>

5           In his next claim, petitioner contends that the trial court gave an erroneous jury

6   instruction in response to a question asked by the jury during its deliberations.  The facts

7   surrounding this claim are set forth below.

8           Petitioner's jury received the following instruction on constructive possession:

9           Every person who, having previously been convicted of a felony
has in his possession or under his control any pistol, revolver or
10   other firearm, is guilty of a violation of Section 12021(a) of the
Penal Code, a crime.

11

12   In order to prove such a crime, each of the following elements must
be proved:

13   The defendant had in his possession or had under his control a
firearm; two, the defendant has knowledge of the presence of said
14   firearm.

15   There are two kinds of possession: Actual possession and
constructive possession.

16

17   Actual possession requires that a person exercise direct physical
control over a thing.

18   Constructive possession does not require actual possession, but
does require that a person *knowingly* exercise control or the right to
19   control a thing either directly or through another person or persons.

20   One person may have possession alone, or two or more persons
together may share actual or constructive possession.

21

22   (RT at 968.)  (Emphasis added.)

23           During deliberations, petitioner's jury sent a note with the following question to

24   the trial judge:

25   On page 31a, it says that constructive possession requires that "a
person *knowingly* exercise control or the right to control a thing . . .
26   ." [p] Does this mean that constructive possession requires that "a

14

1                  person *knowingly* exercise control or <u>exercise</u> the right to control a
thing . . . ." [p] In other words, if we believe he had the right to
2                  control the weapon, must he have exercised that right to be found
guilty?

3

4  (CT at 236; RT at 993-94) ) (italics added, underlining in original).  After discussing the jury's

5  note with the parties, the trial court further instructed the jury as follows:

6                  The answer is this: The answer is the defendant either exercised
control or had the right to exercise control. [p] The question that
7                  you have written, "or exercise the right to control," is not an
interpretation under the instruction.

8

9  (RT at 1004.)

10         In the petition before this court, petitioner alleges that "when the jury was

11  concerned about the question of whether [petitioner] constructively possessed the weapon, the

12  court gave an incomplete and contradictory instruction after an inquiry which indicated that it

13  [sic] the jury was confused as to the elements of the offense." (Am. Pet. at 6.)  On appeal in state

14  court, petitioner argued that the trial judge's response to the jury question was improper because

15  it eliminated the "knowing" requirement and would have permitted the jury to find petitioner

16  guilty even if he did not know there was a firearm in the car.  (Answer, Ex. A at 17.)

17         A challenge to jury instructions does not generally state a federal constitutional

18  claim.  <u>See</u> <u>Middleton</u>, 768 F.2d at 1085 (citing <u>Engle</u>, 456 U.S. at 119); <u>Gutierrez v. Griggs</u>, 695

19  F.2d 1195, 1197 (9th Cir. 1983).  Habeas corpus is unavailable for alleged error in the

20  interpretation or application of state law.  <u>Middleton</u>, 768 F.2d at 1085; <u>see also</u> <u>Lincoln v. Sunn</u>,

21  807 F.2d 805, 814 (9th Cir. 1987); <u>Givens v. Housewright</u>, 786 F.2d 1378, 1381 (9th Cir. 1986).

22  However, a "claim of error based upon a right not specifically guaranteed by the Constitution

23  may nonetheless form a ground for federal habeas corpus relief where its impact so infects the

24  entire trial that the resulting conviction violates the defendant's right to due process."  <u>Hines</u>, 658

25  F.2d at 673, (citing <u>Quigg</u>, 616 F.2d at 107); <u>see also</u> <u>Lisenba</u>, 314 U.S. at 236.

26  /////

1         In order to warrant federal habeas relief, a challenged jury instruction "cannot be

2   merely 'undesirable, erroneous, or even "universally condemned,"' but must violate some due

3   process right guaranteed by the fourteenth amendment." Prantil, 843 F.2d at 317 (1988) (quoting

4   Cupp v. Naughten, 414 U.S. 141, 146 (1973)).  To prevail, petitioner must demonstrate that an

5   erroneous instruction "'so infected the entire trial that the resulting conviction violates due

6   process.'" Estelle, 502 U.S. at 72 (quoting Cupp, 414 U.S. at 147).  In making its determination,

7   this court must evaluate the challenged jury instructions "'in the context of the overall charge to

8   the jury as a component of the entire trial process.'" Prantil, 843 F.2d at 817 (quoting Bashor v.

9   Risley, 730 F.2d 1228, 1239 (9th Cir. 1984)).  Further, in reviewing an allegedly ambiguous

10  instruction, the court "must inquire 'whether there is a reasonable likelihood that the jury has

11  applied the challenged instruction in a way' that violates the Constitution." Estelle, 502 U.S. at

12  72 (quoting Boyde v. California, 494 U.S. 370, 380 (1990)).

13        The California Court of Appeal rejected petitioner's argument in this regard with

14  the following language:

15          Defendant contends the court's answer to the jury's question
        eliminated the "knowing" element completely.  We do not agree

16          with his strained reading.

17          The jury's question did not touch upon the "knowing" element of
        constructive possession.  It explicitly asked whether defendant had

18          to exercise a right to control the weapon, not merely possess the
        right to control.  The court's answer adequately replied to the

19          question and did not touch on the "knowing" element.  We find no
        error.

20

21  (Opinion at 8.)

22        The opinion of the California Court of Appeal that the trial judge adequately

23  responded to the question actually asked by the jury is not contrary to or an unreasonable

24  application of the due process principles set forth above, nor is it based on an unreasonable

25  determination of the facts of this case.  A fair reading of the jury's question reflects confusion

26  about whether petitioner had to actually exercise the right to control the firearm (i.e., use it) or

1   whether it was enough that he could exercise control if he wished to.  The jury's question did not

2   appear to demonstrate any confusion about whether petitioner had to know the weapon was in the

3   car.  In any event, the jury instructions clearly explained that the defendant must have knowledge

4   of the presence of the firearm and that control or right to control had to be "knowing."  (RT at

5   968.)  The trial court did not err in answering the question asked by petitioner's jury.

6          Petitioner's further argument that the trial judge's answer to the jury's question

7   was "incomplete and contradictory" is not borne out by the record.  After reviewing the relevant

8   record, this court concludes that the trial judge's response to the jury's question did not

9   render petitioner's trial fundamentally unfair.  Accordingly, petitioner is not entitled to relief on

10  this claim.

11          D.   Sentencing Error

12          Petitioner raises two claims of sentencing error.  The court will analyze these

13  claims below after setting forth the applicable legal principles.

14          1.   Legal Standards

15          Habeas corpus relief is unavailable for alleged errors in the interpretation or

16  application of state sentencing laws by either a state trial or appellate court, unless the error

17  resulted in a complete miscarriage of justice.  Hill, 368 U.S. at 428; Hendricks v. Zenon, 993

18  F.2d 664, 674 (9th Cir. 1993); Middleton, 768 F.2d at 1085.  So long as a state sentence "is not

19  based on any proscribed federal grounds such as being cruel and unusual, racially or ethnically

20  motivated, or enhanced by indigency, the penalties for violation of state statutes are matters of

21  state concern."  Makal v. State of Arizona, 544 F.2d 1030, 1035 (9th Cir. 1976).  Thus, "[a]bsent

22  a showing of fundamental unfairness, a state court's misapplication of its own sentencing laws

23  does not justify federal habeas relief."  Christian v. Rhode, 41 F.3d 461, 469 (9th Cir. 1994).

24          Applying these principles in federal habeas proceedings, the Ninth Circuit Court

25  of Appeals has specifically refused to consider alleged errors in the application of state

26  sentencing law.  See, e.g., Miller v. Vasquez, 868 F.2d 1116 (9th Cir. 1989).  Thus, in Miller, the

17

1    court refused to examine the state court's determination that a defendant's prior conviction was

2    for a "serious felony" within the meaning of the state statutes governing sentence enhancements.

3    Id. at 1118-19.  The court did not reach the merits of the petitioner's claim, stating that federal

4    habeas relief is not available for alleged errors in interpreting and applying state law.  Id.

5    (quoting Middleton, 768 F.2d at 1085).

6            2.  Consecutive Sentences

7            Petitioner first claims that the state trial court erred in imposing consecutive

8    sentences for his convictions on the charges of evading arrest and possession of a firearm.  "The

9    decision whether to impose sentences concurrently or consecutively is a matter of state criminal

10   procedure and is not within the purview of federal habeas corpus."  Cacoperdo v. Demosthenes,

11   37 F.3d 504, 507 (9th Cir. 1994).   Accordingly, petitioner's challenge to the judge's decision to

12   impose consecutive sentences fails to state a cognizable federal claim and should be rejected.

13           3.  Whether the Prior Convictions are "Strikes"

14           Petitioner also claims that his prior convictions do not constitute proper "strike"

15   offenses within the meaning of California's Three Strikes Law because they occurred prior to the

16   effective date of that law.  Whether or not a prior conviction properly constitutes a "strike" under

17   California's Three Strikes Law involves an interpretation of state sentencing law.  In addition,

18   numerous California courts have determined that prior felony convictions which predate the

19   effective date of the Three Strikes Law are "strikes" within the meaning of that law.  See e.g.,

20   People v. Sipe, 36 Cal. App. 4th 468, 477-479 (1995); People v. Moenius, 60 Cal. App. 4th 820,

21   827 (1998); Gonzales v. Superior Court, Stanislaus County, 37 Cal. App. 4th 1302, 1306-1311

22   (1995); People v. Diaz, 41 Cal. App. 4th 1424, 1428-29 (1996);  People v. Green (1995) 36 Cal.

23   App. 4th 280, 283 (1995).  Federal courts are "bound by a state court's construction of its own

24   penal statutes," Aponte v. Gomez, 993 F.2d 705, 707 (9th Cir. 1993), and this court must defer to

25   the California courts' interpretation of the California Three Strikes Law unless its interpretation

26   /////

1   is "untenable or amounts to a subterfuge to avoid federal review of a constitutional violation."

2   Oxborrow v. Eikenberry, 877 F.2d 1395, 1399 (9th Cir. 1989.)  There is no evidence of that here.

3            Moreover, to the extent that petitioner has stated a federal constitutional claim, he

4   is not entitled to relief.  California's Three Strikes Law took effect on March 7, 1994, before

5   petitioner committed the principal offense in 1995.  The application of a sentencing enhancement

6   based upon a prior conviction does not violate the Ex Post Facto Clause as long as the statute

7   was in effect before the triggering offense was committed.  See United States v.

8   Ahumada-Avalos, 875 F.2d 681, 683-84 (9th Cir.1989).  Petitioner has also failed to show that

9   the state courts committed error resulting in a complete miscarriage of justice.  See Parke v.

10   Raley, 506 U.S. 20, 27 (1992) ("we have repeatedly upheld recidivism statutes 'against

11   contentions that they violate constitutional strictures dealing with double jeopardy, ex post facto

12   laws, cruel and unusual punishment, due process, equal protection, and privileges and

13   immunities'") (quoting Spencer v. Texas, 385 U.S. 554, 560 (1967); United States v. Kaluna,

14   192 F.3d 1188, 1199 (9th Cir. 1999) ("The Supreme Court and this court uniformly have held

15   that recidivist statutes do not violate the Ex Post Facto Clause if they are "on the books at the

16   time the [present] offense was committed.").  For the foregoing reasons, petitioner is not entitled

17   to relief on his claims of sentencing error.

18            E.  Cruel and Unusual Punishment

19            Petitioner claims his sentence of fifty-years-to life constitutes cruel and unusual

20   punishment, in violation of the Eighth Amendment.  The California Court of Appeal rejected this

21   claim on the merits after analyzing pertinent federal law.  (Opinion at 15.)  The appellate court's

22   opinion in this regard is not contrary to federal law and should not be set aside.

23            Successful challenges in federal court to the proportionality of particular sentences

24   are "exceedingly rare."  Solem v. Helm, 463 U.S. 277, 289-90 (1983).  See also Ramirez v.

25   Castro, 365 F.3d 755, 775 (9th Cir. 2004).  "The Eighth Amendment does not require strict

26   proportionality between crime and sentence.  Rather, it forbids only extreme sentences that are

19

1   'grossly disproportionate' to the crime." Harmelin v. Michigan, 501 U.S. 957, 1001 (1991)

2   (Kennedy, J., concurring) (citing Solem v. Helm).  Recently, the United States Supreme Court

3   held that it was not an unreasonable application of clearly established federal law for the

4   California Court of Appeal to affirm a sentence of two consecutive 25 year-to-life imprisonment

5   terms for a petty theft with a prior conviction involving theft of $150.00 worth of videotapes.

6   Lockyer v. Andrade, 538 U.S. 63, 75 (2003); see also Ewing v. California, 538 U.S. 11, 29

7   (2003) (holding that a sentence of 25 years-to-life in prison imposed on a grand theft conviction

8   involving the theft of three golf clubs from a pro shop was not grossly disproportionate and did

9   not violate the Eighth Amendment).

10          Moreover, petitioner's argument focuses solely on the gravity of his most recent

11   offense.  However, because petitioner was sentenced as a recidivist under California's Three

12   Strikes law, "in weighing the gravity" of his offense for purposes of a proportionality analysis,

13   the court "must place on the scales not only his current felony," but also his criminal history.

14   Ewing, 538 U.S. at 29.  See also Ramirez, 365 F.3d at 768.   This is not a case in which the

15   petitioner's criminal history is compromised solely of non-violent offenses stemming from a

16   single, dated incident and single guilty plea resulting only in a one-year jail (as opposed to

17   prison) sentence.  See Ramirez, 365 F.3d at 768-69.  Rather, as noted by the California Court of

18   Appeal:

19              In 1990, [petitioner] committed a misdemeanor battery upon his spouse.
                On May 5, 1992, he placed a semi-automatic pistol upon a victim's neck
20              and demanded money.  He demanded money from two other victims and
                struck them with his gun or his fists.  On May 6, 1992, he committed an
21              armed robbery and struck the victim in the process.  (CT 287-288.)  His
                crimes paint a picture of a violent, almost sadistic, repeat offender for
22              whom a sentence of 50 years to life does not "shock the conscience."

23   (Opinion at 14.)

24          Although harsh, petitioner's sentence is not inconsistent with federal law as set

25   forth in the holdings of the United States Supreme Court noted above.  The sentence imposed

26   was within statutory limits for the offense committed by petitioner and was not grossly

1   disproportionate to the crime of conviction in light of his criminal history.  See Andrade, 538

2   U.S. at 77.  See also Greenholtz v. Inmates of the Nebraska Penal & Correctional Complex, 442

3   U.S. 1, 7 (1979) ("[t]here is no constitutional or inherent right of a convicted person to be

4   conditionally released before the expiration of a valid sentence").  Accordingly, petitioner is not

5   entitled to relief on his Eighth Amendment claim.

6       F.  Cumulative Error

7           Finally, petitioner contends that errors at his trial, when considered cumulatively,

8   deprived him of a fair trial.  The Due Process Clause of the Fourteenth Amendment encompasses

9   the right to a fair trial.  In re Murchison, 349 U.S. 133, 136 (1955).  However, as the United

10  States Supreme Court has stated:

11          The thrust of the many constitutional rules governing the conduct of
            criminal trials is to ensure that those trials lead to fair and correct
12          judgments.  Where a reviewing court can find that the record developed at
            trial establishes guilt beyond a reasonable doubt, the
13          interest in fairness has been satisfied and the judgment should be
            affirmed.  As we have repeatedly stated, "the Constitution entitles a
14          criminal defendant to a fair trial, not a perfect one."

15  Rose v. Clark, 478 U.S. 570, 579 (1986) (quoting Delaware v. Van Arsdall, 475 U.S. 673, 681

16  (1986)).

17          This court has addressed each of the issues raised in the pending petition and has

18  not found merit with respect to any of petitioner's claims.  The court concludes that there were

19  no errors which rendered petitioner's trial fundamentally unfair, either individually or in their

20  cumulative effect. [10]  Therefore, any decision by the California courts rejecting petitioner's

21  cumulative error claim is not contrary to or an unreasonable application of federal law.

22  /////

23

24          [10]  Although the United States Supreme Court has not articulated a claim of "cumulative
        error," the Ninth Circuit has stated that where "no single trial error examined in isolation is
25      sufficiently prejudicial to warrant reversal, the cumulative effect of multiple errors may still
        prejudice a defendant."  United States v. Frederick, 78 F.3d 1370, 1381 (9th Cir. 1996).  See also
26      Karis v. Calderon,  283 F.3d 1117, 1132 (9th Cir. 2002) (same).

1   Accordingly, IT IS HEREBY RECOMMENDED that petitioner's application for

2   a writ of habeas corpus be denied.

3   These findings and recommendations are submitted to the United States District

4   Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within twenty

5   days after being served with these findings and recommendations, any party may file written

6   objections with the court and serve a copy on all parties.  Such a document should be captioned

7   "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections

8   shall be served and filed within ten days after service of the objections.  The parties are advised

9   that failure to file objections within the specified time may waive the right to appeal the District

10  Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

11  DATED: January 24, 2006.

12

13  _____

14  DALE A. DROZD
    UNITED STATES MAGISTRATE JUDGE

15

16  DAD:8/13:curtis1562.2hc

17

18

19

20

21

22

23

24

25

26